United States District Court
District of Columbia

**AFFIDAVIT OF SPECIAL AGENT ROBERT ZACHARIASIEWICZ IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

Your affiant, Robert Zachariasiewicz, being duly sworn, hereby depose and state as follows:

**A. Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for certain accounts controlled by the free web-based electronic mail service provider known as Yahoo headquartered at 701 First Avenue, Sunnyvale, California 94089. The accounts to be searched are Saia_pnc_gt@yahoo.com which are further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer systems of Yahoo, there exists evidence, fruits, and instrumentalities of violations of Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), and Title 18, United States Code, Section 1956 (Laundering Monetary Instruments).

2. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

3. I have been employed by the Drug Enforcement Administration ("DEA") as a Special Agent and am currently assigned to the DEA, Special Operation Division in Chantilly, Virginia. I received sixteen (16) weeks of training at the DEA Academy at Quantico, Virginia, and have

received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities.

4. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions.

5. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of a communication facility to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and MDMA, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

6. I have also conducted investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also participated in the debriefings of many of those individuals arrested who later cooperated with the Government.

7. I have directed numerous confidential informants and cooperating witnesses to successfully infiltrate various-sized narcotic enterprises via intelligence gathering, participation in consensual recordings and monitored purchases of controlled substances. I have executed search warrants for controlled substances and I have conducted surveillance in connection with numerous narcotic investigations.

8. I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including Central and South America and the Caribbean.

9. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

10. In my training and experience, I have learned that Yahoo is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for Yahoo subscribers may be located on the computers of Yahoo. Further, I am aware that computers located at Yahoo contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seeks authorization solely to search the computer accounts and/or files by following the procedures described herein and in Attachment A.

**B. Background Regarding Computers, the Internet, and E-mail**

11. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12. Based on my training, experience and knowledge, I know the following:

a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

**C. Yahoo**

13. Based on my training and experience, I have learned the following about Yahoo :

a. Yahoo is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with Yahoo. Yahoo requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, Yahoo does not verify the information provided;

b. Yahoo maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

c. Subscribers to Yahoo may access their accounts on servers maintained and/or owned by Yahoo from any computer connected to the Internet located anywhere in the world;

d. Any e-mail that is sent to a Yahoo subscriber is stored in the subscriber's "mailbox" on Yahoo's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Yahoo. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on Yahoo's servers indefinitely;

e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Yahoo's servers, and then transmitted to its end destination. Yahoo users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Yahoo server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at Yahoo, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

f. A Yahoo subscriber can store files, including e-mails and image files, on servers maintained and/or owned by Yahoo; and

g. E-mails and image files stored on a Yahoo server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the Yahoo server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the Yahoo server.

**D. Stored Wire and Electronic Communication Access**

    14.  Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

    a)  Title 18, United States Code, Section 2703(a), provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

    b) Title 18, United States Code, Section 2703(b), provides, in part:

> (1)  A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
> > (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
>
> (2)  Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
> > (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
> > (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

    c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A).  No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

> As used in this chapter -
> (1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
> (2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e) Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
> (15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
> (17) "electronic storage" means -
> > (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> > (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

**E. Search Procedure**

15. In order to ensure that Agents search only those computer accounts and or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

   a. The search warrant will be presented to Yahoo personnel who will be directed to isolate those accounts and files described in Attachment A;

   b. In order to minimize any disruption of computer service to innocent third parties, Yahoo employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in

Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

      c. Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

      d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Yahoo employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

      e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo employees and will not further review the original duplicate absent an order of the Court.

**F. Basis for Facts Contained in this Affidavit**

16. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources:

      a. Oral and written reports about this investigation and others that I have received from United States law enforcement officers.

      b. Physical surveillance conducted by the DEA or other foreign law enforcement authorities, which observations have been reported to me either directly or indirectly;

---

[1] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional. United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

17.  Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Such statements are among many statements made by others and are stated in substance, unless otherwise indicated.  Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

18.  I have not set forth each and every fact learned during the course of this investigation.  Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

**G. Probable Cause**

19.  In 2005, a DEA informant learned that law enforcement officers in Guatemala could be approached about taking money to allow illegal shipments of cocaine to enter Guatemala for eventual shipment to the United States.  Beginning in August, and continuing through November 7, 2005, a DEA informant met in Guatemala with three senior law enforcement officials from the SAIA, the Guatemalan national law enforcement agency which investigates controlled substance offenses in Guatemala.  Specifically, a DEA informant met with Adan Castillo, the head of SAIA; Castillo's deputy, Jorge Aguilar; and Rubilio Palacios, the director of security at the port of Santo Tomas, who worked for Castillo and Aguilar.  In separate and joint meetings, a DEA informant  plotted with all three to ship more than 2000 kilograms of cocaine into Santo Tomas.  Castillo and Palacios  agreed that Palacios would not inspect the

containers of cocaine when they entered the port, and Castillo agreed that he and Aguilar would provide security for the cocaine all the way to the Mexican border. Most of these meetings were audio and video taped, and observed by DEA agents. On September 1, 2005 (recorded) and November 7, 2005 (recorded), a DEA informant paid US currency ($25,000) to Castillo, Aguilar, and Palacios to ensure that shipments of cocaine into Guatemala would not be seized by Guatemalan law enforcement and would be protected by Guatemalan law enforcement. On November 15, 2005, all three were arrested in the EDVA when they arrived in the US to attend port security training. Aguilar and Palacios had in their possession some of the US currency (more than $3000) given to the defendants by a DEA informant. Castillo had in his possession a business card showing that he had two email accounts. One account was at hotmail.com (saia_pnc_gt) and one account was at yahoo.com (same identifying letters). During questioning, Castillo stated he had the two email accounts and they were still current. Castillo became noticeably concerned when told the agents would seek access to his email. One reason for this concern could be because Castillo and Aguilar worked in Guatemala City, in the interior of Guatemala, while Palacios worked in the port on the coast. Although there is telephone service in Guatemala, it is likely Castillo and Palacios communicated via email too.

20.     On November 10, 2005, CASTILLO and the others were indicted in the District of Columbia. The charges include violations of U.S. Code, Title 21, Section 959 (conspiracy to import cocaine into the United States).

**PALACIOS' EMAIL ACCOUNT**

22.     The e-mail account named saia _pnc_gt@yahoo.com is apparently subscribed to Castillo in Guatemala. No additional subscriber information is known. Yahoo offers free e-mail accounts and does not necessarily verify subscriber names or addresses. Since the accounts are offered for free, no billing information is necessary and thus, names and addresses do not

need to be verified. Based upon my experience with narcotics-related internet investigations, I am aware that narcotics traffickers often utilize such free services because it allows them to maintain anonymity and further allows them to create multiple accounts with ease and no expense. In this investigation, Castillo would have to have some easy way to communicate with Palacios, as Castillo was in Guatemala City, in the interior of the country, and Palacios was by the ocean at Puerto Santo Tomas.

23. Based upon your affiant's training and experience as an agent with the DEA, your affiant knows that drug traffickers frequently communicate with each other by means of the internet and e-mail. It is the experience of your affiant that drug traffickers do not use their true identities or their correct addresses, especially if they are trying to avoid law enforcement detection.

24. Your affiant believes that the contents of the above-mentioned e-mail account will contain valuable information that will enable law enforcement to further the investigation against this major drug trafficking organization, corroborate existing information, identify potential defendants not presently known to your affiant, as well as to identify the structure of the organization

**H. Conclusion**

25. Based upon the information above, your affiant believes that probable cause exists that on the computer systems owned, maintained, and/or operated by Yahoo, headquartered at 701 First Avenue, Sunnyvale, California 94089 there exists evidence, fruits, and instrumentalities of violations of Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), and Title 18, United States Code, Section 1956 (Laundering Monetary Instruments). By this affidavit and application, I request that the Court issue a search warrant directed to Yahoo to allow agents to seize e-mail,

attachments and other information (described in Attachment A, part II) stored on the Yahoo servers for the computer accounts and files, and following the search procedure described in Attachment A, part I.

**I. Request for Sealing**

26  Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation.  Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and the attachment thereto be filed under seal until further order of this Court, and directing Yahoo not to disclose to the subscriber(s) or any other person the existence of the same application, affidavit, search warrant and attachment, until directed to do so by the Court..

_____

Robert Zachariasiewicz

Special Agent

Drug Enforcement Administration

Sworn to and subscribed before me this \_\_\_\_\_ day of November, 2005.

_____

Magistrate Judge